JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | EDCV 17-00583 JGB (DTBx) | Date | March 16, 2018 |
|---|---|---|---|
| Title | *David Tran v. Ross University School of Medicine* | | |

Present: The Honorable  JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:**   Order: (1) GRANTING Defendant's Motion to Dismiss Pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure (Dkt. No. 18); (2) DISMISING Plaintiff's First Amended Complaint WITHOUT LEAVE TO AMEND; (3) DENYING Plaintiff's Motion to Transfer Venue (Dkt. No. 33); and (4) VACATING the March 19, 2018 Hearing (IN CHAMBERS)

　　　　Before the Court are Defendant Ross University School of Medicine's ("Defendant") motion to dismiss Plaintiff David Tran's ("Plaintiff") First Amended Complaint ("FAC," Dkt. No. 17) pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6) ("Motion to Dismiss," Dkt. No. 18), and Plaintiff's motion to transfer venue ("Motion to Transfer," Dkt. No. 33).  The Court finds these matters appropriate for resolution without a hearing.  See Fed. R. Civ. P. 78; L.R. 7-15.  After considering all papers filed in support of, and in opposition to, these motions, the Court: (1) GRANTS Defendant's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2); (2) DISMISSES Plaintiff's FAC WITHOUT LEAVE TO AMEND; (3) DENIES Plaintiff's Motion to Transfer Venue; and (4) VACATES the March 19, 2018 Hearing.

## I.    BACKGROUND

　　　　On March 27, 2017, Plaintiff David Tran ("Plaintiff"), proceeding pro se, filed a complaint against Defendant.  ("Complaint," Dkt. No. 1.)  On July 3, 2017, Plaintiff filed his

FAC. In his FAC, Plaintiff alleges the following thirteen[1] causes of action: (1) breach of implied in fact contract; (2) breach of contract; (3) breach of contract; (4) fraud; (5) misrepresentation; (6) breach of fiduciary duties; (7) breach of covenant; (8) California's Unfair Competition Law; (9) California Education Code Section 94814; (10) negligence; (11) infliction of emotional distress; (12) Rehabilitation Act of 1973; and (13) Title VI, Civil Rights Act of 1964. (See generally FAC.) On August 2, 2017, Defendant filed its Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6). Plaintiff did not file an opposition, but subsequently filed a motion to transfer venue to the Southern District of Florida. (Dkt. No. 26.) The parties then filed a joint motion to continue the hearing on the Motion to Dismiss because of the overlap between the two motions. (Dkt. No. 27 at 2.) Plaintiff withdrew his motion to transfer venue to the Southern District of Florida on December 4, 2017. (Dkt. No. 30.) On December 22, 2017, Plaintiff filed his Motion to Transfer to the District of New Jersey. Defendant filed an opposition on February 26, 2018. ("Opposition," Dkt. No. 34.) To date, Plaintiff has not filed a reply.

## II. FACTUAL ALLEGATIONS

Plaintiff alleges the following in his FAC. Plaintiff filed suit against Defendant in September 2016 in the Superior Court of California, Riverside County. (FAC ¶ 9.) Plaintiff voluntarily dismissed the action later that month. (Id.) He then filed another suit against DeVry Medical International, Inc., one of Defendant's sister corporations, in the Superior Court of California, Riverside County. (Id.) That action was subsequently removed to this District, and Plaintiff, in November 2016, voluntarily dismissed the case. (Id.) On December 1, 2016, Plaintiff re-filed suit against Defendant in the Superior Court of California, Riverside County. (Id.) Two months later, Plaintiff voluntarily dismissed that case. (Id.)

Defendant recruited Plaintiff by way of a graduate information booth and advertising fliers at the University of California, Riverside, Plaintiff's undergraduate institution. (Id. ¶ 8.) Via the Internet, Plaintiff accepted an admission offer from Defendant and paid a seat deposit in April 2010. (Id.)

In high school, Plaintiff was diagnosed with Obsessive-Compulsive Disorder ("OCD") and needs reasonable academic accommodations. (Id. ¶ 10.) Defendant requires students to maintain a minimum grade point average ("GPA") of 2.00 by the end of their fourth semester in order to advance to clinical studies/the fifth semester. (Id. ¶ 12.) In Plaintiff's first semester (2011), Defendant engaged in discrimination based on Plaintiff's disability, as it did not provide Plaintiff with reasonable academic accommodations (e.g., extension of time on examinations), despite Plaintiff's supporting documentation. (Id. ¶ 13.) As a result, Plaintiff performed poorly (e.g., failing his examinations), resulting in his academic dismissal in April 2011. (Id. ¶ 14.)

---

[1] The caption of the FAC lists twelve causes of action. (FAC at 1.) However, the body of the FAC sets forth thirteen causes of action, as Plaintiff alleges breach of contract twice. (See generally FAC.)

In the summer of 2011, Plaintiff filed a complaint with the Office for Civil Rights, alleging disability discrimination. (Id. ¶15.) The parties participated in Alternative Dispute Resolution (ADR) and reached an agreement in October 2012. (Id. ¶ 16.) Plaintiff later realized that the agreement was "lopsided."[2] (Id. ¶ 17.)

Plaintiff re-matriculated in January 2012, repeated his first semester, and received reasonable academic accommodations. (Id. ¶ 17.) Plaintiff passed all of his courses. (Id.) At the end of the semester, Plaintiff realized that the three "F" grades he received in 2011 were averaged into his overall GPA. (Id.) As a result, although Plaintiff passed all of his courses, his GPA was well below the minimum 2.00 required at the end of the fourth semester. (Id.) Plaintiff tried, without success, to remedy this situation with the academic dean. (Id. ¶ 19.)

Plaintiff filed another complaint alleging disability discrimination with the Office of Civil Rights. (Id. ¶ 20.) Plaintiff continued to pass, although marginally, all of his classes in the second and third semester. (Id. ¶ 21.) During his fourth semester (January-April 2013), Plaintiff experienced minor personal issues as well as significant fears of discrimination, resulting in "an extremely hostile environment unconducive to learning." (Id. ¶ 22.) Plaintiff alleges discrimination by Dr. Sanford, a professor, which resulted in poor grades. (Id. ¶¶ 23-24.) The discrimination impacted Plaintiff psychologically, interfering with his ability to attend class meetings and impacting his sleep. (Id. ¶ 24.) As a result, Plaintiff saw one of the school's clinical counselors, who described Plaintiff as "suffering from a 'grave' psychological state." (Id. ¶ 25.) One of the clinical directors, concluded that there were problems with the student-instructor interaction and determined that Plaintiff's three poor grades would not count against him. (Id. ¶ 27.) Plaintiff was also allowed to relocate to a different section and instructor for Introduction to Clinical Medicine (ICM). (Id.) However, Plaintiff still had to contend with the psychological trauma he had experienced and the unexcused absences. (Id. ¶ 28.) Plaintiff emailed the dean. (Id. ¶ 29.) The dean never communicated an ultimate decision regarding the absences (i.e., whether he would remove one of the absences from Plaintiff's record). (Id.)

A week before Plaintiff's final examination, some faculty members recommended that he take a leave of absence. (Id. ¶ 30.) Plaintiff opted to take his final examinations, instead, and failed one of his courses by two percentage points. (Id. ¶ 31.) Plaintiff, thus, had received two "F" grades. (Id. ¶ 33.) Following the examination, Plaintiff found out that students had access to some questions prior to the examination because the exam contained recycled questions from "leaked study guides." (Id. ¶ 32.)

Plaintiff maintains that Defendant failed to counsel him of any potential academic issues. (Id. ¶ 35.) Plaintiff was a marginal to average student, but would have needed to achieve nearly straight As in his fourth semester to earn the minimum required 2.00 GPA. (Id. ¶ 36.) Because of Defendant's failure to counsel Plaintiff, Plaintiff "incurred unnecessary time as an enrolled

---

[2] Plaintiff alleges, inter alia, that Defendant failed to disclose any grading policy changes taking effect January 2012 for incoming students. (FAC ¶ 18(a).)

student, money spent, and the stress of being a medical student." (Id. ¶ 37.) Plaintiff also alleges that it would have been ill advised to file for a leave of absence as he would have been subject to dismissal regardless. (Id. ¶ 39.)

Plaintiff contends Defendant is liable for creating a hostile learning environment (e.g., Plaintiff's interactions with his professor), resulting in distractions to Plaintiff. (Id. ¶ 41.) After his dismissal again in April 2013, Plaintiff underwent internal grievance procedures with Defendant. (Id. ¶ 43.) However, the dismissal was upheld. (Id.) In summer 2013, Plaintiff filed another complaint with the Office of Civil Rights, alleging disability discrimination and retaliation. (Id.) Mediation was not successful and an investigation was conducted. (Id. ¶ 44.) The allegations were ultimately dismissed. (Id.)

Subsequently, Plaintiff was diagnosed with Recurrent Major Depression, in addition to his pre-existing OCD. (Id. ¶ 45.) He has experienced doubt, shame, embarrassment, and insecurity. (Id. ¶ 47.) Plaintiff's relationship with his spouse has become strained. (Id. ¶ 48.) Although Plaintiff and his spouse had planned for her to quit her job and raise the children, she had to look for a new job. (Id. ¶ 49.) The situation has also hindered his relationship with his extended family. (Id. ¶ 51.) Plaintiff still suffers extreme psychological and emotional distress and experiences relapses with OCD and depression. (Id. ¶ 52.) The balanced on his student loans exceeds $140,000. (Id.)

### III.    MOTION TO DISMISS[3]

Defendant, citing Federal Rule of Civil Procedure 12(b)(2), or in the alternative Federal Rule of Civil Procedure 12(b)(6), moves to dismiss the FAC. (Motion to Dismiss at 2.) The Court will first address the Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2), lack of personal jurisdiction.

**A. Personal Jurisdiction**

  1. **Legal Standard**

The plaintiff bears the burden of establishing personal jurisdiction. Wash. Shoe Co. v. A-Z Sporting Goods, Inc., 704 F.3d 668, 671–72 (9th Cir. 2012), abrogated on other grounds, as recognized by Axiom Foods, Inc. v. Acerchem Int'l, Inc., 874 F.3d 1064 (9th Cir. 2017). When the motion is based on written materials, the plaintiff must make a "prima facie showing of jurisdictional facts to withstand the motion to dismiss." Martinez v. Aero Caribbean, 764 F.3d 1062, 1066 (9th Cir. 2014) (quoting Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 800 (9th Cir. 2004)). To make a "prima facie showing," the plaintiff needs to show facts that, if true, would support jurisdiction over the defendant. Lindora, LLC v. Isagenix Int'l, LLC, 198 F.

---

[3] In his Motion to Transfer, Plaintiff requests the Court not consider Defendant's Motion to Dismiss "during this challenge in venue." (Motion to Transfer at 9.) The Court declines to heed this request and considers Defendant's Motion to Dismiss at this time.

Supp. 3d 1127, 1135 (S.D. Cal. 2016).  To determine if a plaintiff has met his burden, "uncontroverted allegations in [the] complaint must be taken as true, and 'conflicts between the facts contained in the parties' affidavits must be resolved in [the plaintiff's] favor for purposes of deciding whether a prima facie case for personal jurisdiction exists.'"  Am. Tel. & Tel. Co. v. Compagnie Bruxelles Lambert, 94 F.3d 586, 588-89 (9th Cir. 1996) (quoting WNS, Inc. v. Farrow, 884 F.2d 200, 203 (5th Cir. 1989)).  However, the Court need not assume the truth of mere conclusory allegations.  Nicosia v. De Rooy, 72 F. Supp. 2d 1093, 1097 (N.D. Cal. 1999).

"Where, as here, no federal statute authorizes personal jurisdiction, the district court applies the law of the state in which the court sits."  Mavrix Photo, Inc. v. Brand Techs., Inc., 647 F.3d 1218, 1223 (9th Cir. 2011) (internal citations omitted).  California's long-arm statute permits its courts to exercise personal jurisdiction "on any basis not inconsistent with the Constitution of this state or of the United States."  Daimler AG v. Bauman, 134 S. Ct. 746, 753 (2014) (quoting Cal. Civ. Proc. Code § 410.10).  Hence, "California's long-arm statute allows the exercise of personal jurisdiction to the full extent permissible under the U.S. Constitution," and the Court's assertion of personal jurisdiction complies with the Constitution.  Daimler, 134 S. Ct. at 453 (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 464 (1985)).

Personal jurisdiction can be either "general" or "specific."  See Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 415–16 (1984).  "A court has general personal jurisdiction over a defendant whose contacts with the forum are so continuous and systematic as to render them essentially at home in the forum state. [internal quotation marks and citation omitted.]  If the court lacks general personal jurisdiction, it may have specific personal jurisdiction if the defendant has certain minimum contacts with the forum state, the controversy arose out of those contacts, and the exercise of jurisdiction is reasonable."  Adidas Am., Inc. v. Cougar Sport, Inc., 169 F. Supp. 3d 1079, 1086 (D. Or. 2016).

2. Discussion

Plaintiff practically concedes that the Court lacks personal jurisdiction.  In his Motion to Transfer, Plaintiff writes:  "Plaintiff acknowledges or is fearful that the lack of personal jurisdiction would dismiss the case . . ."  (Motion to Transfer at 3.)  He also states, "[u]pon further research, however, Plaintiff is strongly doubtful of whether or not California has personal jurisdiction over the [D]efendant based on the doctrine of 'minimum contacts.'"  (Id. at 4-5.)  Further, Plaintiff's Motion to Transfer is pursuant to 28 U.S.C. § 1406(a), which provides for transfer from forums in which venue has been wrongly or improperly laid.  See Kawamoto v. CB Richard Ellis, Inc., 225 F. Supp. 2d 1209, 121 (D. Haw. 2002) (". . . 1406(a) is generally relied on when venue is not proper in the forum where a plaintiff originally filed suit.")

The Court "liberally construes" Plaintiff's pleadings, as he is proceeding pro se.  See Estelle v. Gamble, 429 U.S. 97, 106 (1976).  Given the use of the terms "doubtful" and "fearful," the Court reads Plaintiff's statements not as admissions but as mere uncertainty.  Thus, the Court will engage in a personal jurisdiction analysis.

### a. General Jurisdiction

"With respect to a corporation, the place of incorporation and principal place of business are paradigm bases for general jurisdiction." Daimler, 134 S. Ct. at 760 (internal quotations omitted). The Supreme Court has limited general jurisdiction over corporations to only those forums where the corporation has continuous and systematic contacts, such that it is essentially at home. Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 918 (2011). The Supreme Court in Daimler, however, did not foreclose the possibility that in an "exceptional case" a court could exercise general jurisdiction over a corporation in a state not its principal place of business or place of incorporation. Daimler, 134 S. Ct. at 761 n.19.

In his FAC, Plaintiff states that Defendant's principal place of business is in a U.S. state outside of California. (FAC ¶¶ 1, 4.) He, however, maintains that he is uncertain of Defendant's principal place of business, but reasonably assumes that it is in Illinois. (Id. ¶ 2.) He does not discuss where Defendant is incorporated. (See generally FAC.) In its Motion to Dismiss, Defendant states that it is incorporated and has its principal place of business in the Commonwealth of Dominica. (Motion to Dismiss at 6 (citing Declaration of Jeffrey Harper, Dkt. No. 18-2 ¶ 2; Declaration of William F. Owen, Dkt. No. 18-2 ¶ 2).)

In his FAC, Plaintiff alleges Defendant "conducts ongoing and substantial business within this state via various recruitment methods, including the use of graduate school information seminars, on-campus graduate school information sessions and booths, advertisements by posting on university billboards, mailing prospective and admitted students catalogs and brochures, electronic communications with students and prospective students from California (including Plaintiff), and online advertisements." (FAC ¶ 4.) Further, Plaintiff states, "although not related to the causes of action, [Defendant] has hospital affiliations in the state of California." (Id.) Defendant also conducted an admissions interview with Plaintiff in the state. (Id.)

In Norris v. Oklahoma City Univ., plaintiff, a graduate student of defendant City University School of Law, alleged numerous causes of action stemming from her legal education. No. 93-1626, 1993 WL 313122, at *1 (N.D. Cal. Aug. 3, 1993), aff'd by 21 F.3d 1115 (9th Cir. 1994). The defendant there maintained contact with current and former students within California, but those contacts were insufficient to establish general jurisdiction. Id. at *2 (citations omitted). The plaintiff did not submit any evidence showing that the defendant conducted regular business activity; the defendant did not conduct classes, have employees, maintain offices, own property, or possess a mailing address in California. Id. at *1. The court cited Gehling v. St. George's School of Medicine, Ltd., 773 F.2d 539, 542-43 (3d Cir. 1985) for the proposition that "solicitation of students within the forum state, residence of some number of students in forum state, and media swings by school representatives through forum state to recruit students are not enough to satisfy general jurisdiction requirements." Norris, 1993 WL 313122, at *2.

Accordingly, the Court here finds it too lacks general jurisdiction.

### b. Specific Jurisdiction

The Ninth Circuit uses a three-part test to determine if a defendant's contacts with the forum state are sufficient to establish specific jurisdiction. <u>Ballard v. Savage</u>, 65 F.3d 1495, 1498 (9th Cir. 1995). Specific jurisdiction exists if: (1) the out of state defendant purposefully availed him or herself of the privilege of conducting activities in the forum, consequently invoking the benefits and protections of the forum's laws; (2) the cause of action arose out of the defendant's forum related activities; and (3) the exercise of jurisdiction is reasonable. <u>Myers v. Bennet Law Offices</u>, 238 F.3d 1068, 1072 (9th Cir. 2001); <u>see also</u> <u>Data Disc, Inc. v. Sys. Tech. Assocs., Inc.</u>, 557 F.2d 1280, 1287 (9th Cir. 1977). The plaintiff has the burden of meeting the first two prongs of the specific jurisdiction test. <u>Schwarzenegger</u>, 374 F.3d at 802. "If the plaintiff succeeds in satisfying both of the first two prongs, the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." <u>Id.</u> (quoting <u>Burger King Corp</u>, 471 U.S. 476–78.

### i. Purposeful Availment

"The exact form of our jurisdictional inquiry depends on the nature of the claim at issue. For claims sounding in contract, we generally apply a 'purposeful availment' analysis and ask whether a defendant has 'purposefully avail[ed] [himself] of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.' <u>Schwarzenegger</u>, 374 F.3d at 802 (quoting <u>Hanson v. Denckla</u>, 357 U.S. 235, 253 . . . (1958)). For claims sounding in tort, we instead apply a 'purposeful direction' test and look to evidence that the defendant has directed his actions at the forum state, even if those actions took place elsewhere. <u>Id.</u> at 802–03." <u>Picot v. Weston</u>, 780 F.3d 1206, 1212 (9th Cir. 2015).

Assuming that Plaintiff meets the purposeful availment prong, he still cannot establish specific jurisdiction because the cause of action did not arise out of Defendant's forum related activities, as analyzed below.

### ii. Cause of Action Did Not Arise out of the Defendant's Forum Related Activities

Plaintiff argues that "although the causes of action arising out of the relationship between [Plaintiff and Defendant] were carried out and performed in the Commonwealth of Dominica, the causes of actions were initiated in Riverside County, California (where solicitation of [Defendant's] educational services and recruitment took place)." (FAC ¶ 4.) Defendant contends that this is insufficient to establish that the claim arose out of its forum related activities. The Court agrees.

In <u>Norris</u>, discussed above, the plaintiff also failed to establish specific jurisdiction. <u>Id.</u> at *3. The defendant's contacts with California were "typical out-of-state school activities such as student recruitment and communication with current students and alumni." <u>Norris</u>, 1993 WL

313122, at *3.  However, the majority of the plaintiff's claims arose from activity in Oklahoma. Id.  The case at bar resembles Norris in that Defendant's only contacts concern recruitment. Plaintiff's causes of action, however, stem from the alleged hostile learning environment and his dismissal, inter alia, all of which occurred in Dominica.  Plaintiff has failed to carry his burden in establishing that the causes of action arise out of the forum related activity.

Accordingly, the Court finds that it lacks personal jurisdiction over Defendant and GRANTS Defendant's Motion to Dismiss pursuant to Rule 12(b)(2).

**B. Failure to State a Claim**

Defendant also moves to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). The Court, however, need not reach this analysis because it finds that it cannot exercise personal jurisdiction over Defendant.

### IV.     MOTION TO TRANSFER VENUE

**A.  Legal Standard**

"The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). "[N]ormally transfer will be in the interest of justice because normally dismissal of an action that could be brought elsewhere is time-consuming and justice-defeating." Amity Rubberized Pen Co. v. Mkt. Quest Grp. Inc., 793 F.3d 991, 996 (9th Cir.2015) (citations omitted). The Ninth Circuit has "rarely found that transfer would not serve the interests of justice," and such cases generally involve bad faith, time-barred, or otherwise futile claims.  Id.; see also Clarke v. Aljex Software, Inc., No. 15-01271, 2015 WL 9305487, at *3 (D. Or. Dec. 1, 2015), report and recommendation adopted, No. 15-01271, 2015 WL 9305655 (D. Or. Dec. 21, 2015).  Plaintiff moves to transfer the case pursuant to 28 U.S.C. § 1406(a) and bears the burden of showing that transfer is warranted.  See Duke v. Flying J, Inc., 178 F. Supp. 3d 918, 921 (N.D. Cal. 2016) ("Plaintiff has not met his burden of showing that transfer is warranted under either § 1406(a) or § 1404(a)).  Although in connection with a motion to transfer pursuant to § 1404(a), courts in this circuit have stated: "When reviewing a motion to transfer venue . . . a court may consider evidence outside of the pleadings but must draw all reasonable inferences and resolve factual conflicts in favor of the non-moving party."  See Universal Stabilization Techs., Inc. v. Advanced Bionutrition Corp., No. 17CV87-GPC(MDD), 2017 WL 1838955, at *9 (S.D. Cal. May 8, 2017) (internal quotation marks and citation omitted); see also Rogers v. Wilmington Tr. Co., No. 117CV00392AWISAB, 2018 WL 489168, at *1 n.1 (E.D. Cal. Jan. 19, 2018) (quoting same).

B. Discussion

1. Interest of Justice

"The plain statutory language of 28 U.S.C. § 1406(a) instructs the court to determine whether the 'interest of justice' requires a transfer rather than a dismissal of present action." Ukai v. Fleurvil, No. CIV 06-00237 JMS/KSC, 2006 WL 3246615, at *4 (D. Haw. Nov. 7, 2006). Even if the Court concludes the interest of justice requires transfer, it finds transfer to the District Court of New Jersey is not procedurally proper, as discussed below.

2. Proper Transferee Forum

The Court may transfer this action only to a transferee court in which the action "could have been brought" initially. 28 U.S.C. § 1406(a). "Thus, the receiving or transferee court must (1) have proper subject matter jurisdiction; (2) proper venue; and (3) the defendants must be subject to personal jurisdiction and amendable to service of process in that district." Ukai, 2006 WL 3246615, at *5 (citing Shapiro v. Bonanza Hotel Co., 185 F.2d 777, 780 (9th Cir. 1950) (interpreting similar language contained in 28 U.S.C. § 1404(a))). The Court finds the proposed transferee court, the District of New Jersey, does not have personal jurisdiction over Defendant, as analyzed below, and thus, the action could not have originally been brought in that court. The Court need not also examine whether there is proper subject matter jurisdiction or venue.

  a. Personal Jurisdiction

   i. New Jersey's Long Arm Statute

New Jersey's long-arm statute "provides for jurisdiction coextensive with the due process requirements of the United States Constitution." Miller Yacht Sales, Inc. v. Smith, 384 F.3d 93, 96 (3d Cir. 2004) (citing N.J. Court Rule 4:4–4(c); Charles Gendler & Co. v. Telecom Equip. Corp., 102 N.J. 460, 508 A.2d 1127, 1131 (1986)). Thus, "personal jurisdiction over a non-resident defendant is proper in this [the District of New Jersey] if the defendant has certain minimum contracts with [New Jersey] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Ontel Products Corp. v. Mindscope Products, 220 F. Supp. 3d 555, 559 (D. N.J. 2016).

   ii. General Jurisdiction

General jurisdiction exists "when the defendant's affiliations with the forum state are 'so continuous and systematic as to render them essentially at home in the forum state.'" Id. (citing Goodyear, 564 U.S. at 919). The New Jersey District Court has stated:

> For a corporate defendant, the main bases for general jurisdiction are (1) the place of incorporation; and (2) the principal place of business. Daimler AG v. Bauman, --- U.S. ---, 134 S. Ct. 746, 760, 187 L.Ed.2d 624 (2014) (internal citations

omitted). Aside from these exemplar bases, general jurisdiction may arise in the "exceptional case" where "a corporation's operations in a forum other than its formal place of incorporation or principal place of business may be so substantial and of such a nature as to render the corporation at home in that State." Id. at 761 n.19.

Ontel Products Corp., 220 F. Supp. 3d at 559-60.

Here, the New Jersey District Court does not have general jurisdiction over Defendant. Plaintiff claims Defendant is "at home" in New Jersey because it performs continuous and substantial corporate activities in the state. (Mot. at 7.) Defendant maintains, in submitted declarations, that it is neither headquartered nor incorporated in New Jersey; it is headquartered and incorporated in the Commonwealth of Dominica. (Opp. at 4 (citing Dkt. No. 18-1, Harper Decl. ¶ 2; Dkt. No. 18-2, Owen Decl. ¶ 2).) Plaintiff neither concedes nor challenges these assertions, although in his FAC he states he believes Defendant's principal place of business is in Illinois. (FAC ¶ 2.)

Plaintiff also asserts Defendant brought suit in New Jersey in an unrelated case, "knowing that they are 'at home.'" (Mot. at 7.) "'The North Brunswick (NJ) offices house[] the following departments: student financial aid, alumni services, admissions, information technology, human resources, financial, budgeting, accounting, accreditation, licensing, and marketing[.]'" (Id. (citation omitted).) Plaintiff cites Ross University School of Medicine, et al. v. AMINI, et al., No. 13-6121, 2014 WL 29032, at *1 (D.N.J. Jan. 2, 2014), which supports such proposition. Defendant argues even if this were true in 2014, it does not mean it is currently accurate. (Opp. at 4.) More persuasive, however, is the contention that even if such business were currently conducted in New Jersey, general jurisdiction still would not exist. (Opp. at 4-5.)

Plaintiff cites Perkins v. Benguet Consol. Min. Co., 342 U.S. 437 (1952) to support his contention that the activities in New Jersey suffice for general jurisdiction there. (Mot. at 7-8.) In BNSF Ry. Co. v. Tyrrell, 137 S. Ct. 1549, 1558 (2017), the Supreme Court cited Perkins as an example of an "exceptional case" in which a court may exercise personal jurisdiction even if the defendant is not "at home" in the forum state. In Perkins, the company operated in the Philippine Islands, but had to completely halt its operations due to occupation of the Islands by the Japanese. 342 U.S. at 447. As a result, the company effectively moved its corporate headquarters and finances to Ohio, where the company's interim president, who was also the general manager and principal stockholder of the company, resided. Id. at 447-48. "Because Ohio then became 'the center of the corporation's wartime activities,' [citation omitted], suit was proper there [citation omitted]." BNSF Ry. Co., 137 S. Ct. at 1558. The case at bar is distinct from Perkins. Here, Plaintiff presents no evidence that Defendant's headquarters have de facto been moved to New Jersey or the school relocated from Dominica to New Jersey.

The Supreme Court in Dalimer clarified:

> [T]he general jurisdiction inquiry does not "focu[s] solely on the magnitude of the defendant's in-state contacts.'" Post, at 767. General jurisdiction instead calls

for an appraisal of a corporation's activities in their entirety, nationwide and worldwide. A corporation that operates in many places can scarcely be deemed at home in all of them. Otherwise, 'at home' would be synonymous with 'doing business' tests framed before specific jurisdiction evolved in the United States.

Dalimer, 134 S. Ct. at 762 n.20 (citation omitted). Here, Plaintiff has not presented evidence, or even alleged, that Defendant conducts any more activity in New Jersey than in any of the other states in which it has offices. See Farber v. Tennant Truck Lines, Inc., 84 F. Supp. 3d 421, 433 (E.D. Pa. 2015) ("The Plaintiffs have not alleged or shown that Tennant is any more active in Pennsylvania than in any other state in which it delivers cargo."). The Eastern District of Pennsylvania articulated: "Since International Shoe, the origin of modern jurisdiction, the Supreme Court has maintained that 'continuous activity of some sorts within a state is not enough to support the demand that the corporation be amendable to suits unrelated to that activity.'" Farber, 84 F. Supp. 3d at 433 (quoting International Show, 326 U.S. at 318, cited in Goodyear 131 S. Ct. at 2856).

Accordingly, the Court finds the District of New Jersey would not have general jurisdiction.

### iii. Specific Jurisdiction

Plaintiff does not assert that specific jurisdiction exists. In fact, he claims, "[i]n this case, personal jurisdiction is solely met through general jurisdiction . . ." (Mot. at 7.) He also concedes, "the claims in this case did not directly arise out of New Jersey." (Id. at 9.)

"Specific jurisdiction relies on the defendant's forum-related activities that give rise to the plaintiff's claims." Ontel Products Corp., 220 F. Supp. 3d at 560 (citing Helicopteros, 466 U.S. at 413-14). A court engages in a three-part inquiry to determine whether specific jurisdiction exists: "(1) whether the defendant purposefully directed its activities at the forum; (2) whether the litigation arises out of or relates to at least one of the contacts; and (3) whether the exercise of jurisdiction otherwise comports with traditional notions of fair play and substantial justice." Id. (citing O'Connor v. Sandy Lane Hotel Co., Ltd., 496 F.3d 312, 317 (3d Cir. 2007).

Here, a New Jersey District court would not have specific jurisdiction over Defendant. Plaintiff alleges Defendants performed corporate activities in New Jersey. (Mot. at 7.) Even if these activities were enough to show Defendant purposefully directed activities at the forum, the litigation does not arise out of or relate to any of these contacts. Plaintiff attended school in the Dominica, and was recruited from California. In fact, there is no mention of New Jersey in his FAC. Thus, there is no specific jurisdiction.

Accordingly, the Court DENIES Plaintiff's Motion to transfer venue.

## V. LEAVE TO AMEND

Nothing in the record indicates Plaintiff may be able to allege additional facts establishing personal jurisdiction. Accordingly, the Court concludes amendment would be futile and DISMISSES the FAC WITHOUT LEAVE TO AMEND. See Gordon v. APM Terminals N. Am., Inc., No. 17-CV-03970-MEJ, 2017 WL 3838092, at *7 (N.D. Cal. Sept. 1, 2017) (granting the motion to dismiss pursuant to Rule 12(b)(2) without leave to amend where the court determined the plaintiff would not be able to prove additional facts establishing personal jurisdiction); see also Lefkowitz v. Scytl USA, No. 15-cv-05005-JSC, 2016 WL 537952, at *5 (N.D. Cal. Feb. 11, 2016) ("The dismissal shall be without leave to amend since amendment would be futile."); Pelican Commc'ns, Inc. v. Schneider, No. C-14-4371 EMC, 2015 WL 527472, at *3 (N.D. Cal. Feb. 6, 2015) (granting a motion to dismiss for lack of personal jurisdiction without leave to amend because the court "was not presented with any argument as to how [the plaintiff] might be able to allege or prove additional facts establishing personal jurisdiction.").

## VI. CONCLUSION

For the foregoing reasons, the Court GRANTS Defendant's Motion to Dismiss pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure; DISMISSES Plaintiff's FAC WITHOUT LEAVE TO AMEND; and DENIES Plaintiff's Motion to Transfer Venue. The Court hereby VACATES the March 19, 2018 hearing.

**IT IS SO ORDERED.**